UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
────────────────────────────────────

JOHNNIE BUNTING,

                    Plaintiff,

          -v-                                              04-CV-0731A(HKS)

CONWAY,
et al.,

                    Defendants,

────────────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

          This case was referred to the undersigned by the Hon. Richard J.

Arcara pursuant to Title 28, United States Code, Section 636(b)(1), for all pretrial

matters and to hear and report upon dispositive motions (Dkt. #16).

## PRELIMINARY STATEMENT

          Currently before the Court are defendants' motion for partial summary

judgment (Dkt. #49) and plaintiff's motion for partial summary judgment (Dkt. #71).

          Plaintiff is currently incarcerated with the New York State Department of

Correctional Services ("DOCS") and commenced this *pro se* action pursuant to 42

U.S.C. § 1983 alleging various constitutional deprivations when he was housed at

the Attica Correctional Facility ("Attica").

          Defendants in this action are current and former DOCS employees,

including DOCS Commissioner Glenn S. Goord ("Goord"), Director of Special

Housing/Inmate Disciplinary Program Donald Selsky ("Selsky"), Attica

Superintendent James Conway ("Conway"), Deputy Superintendent of Security

Randy James ("James"), Hearing Officer James Kennedy ("Kennedy"), Roger

Hagmier, R.N. ("Hagmier"), Correctional Officer ("C.O.") John Porter ("Porter"), C.O. Patrick Foley ("Foley"), C.O. C. Baumgardner ("Baumgardner"), C.O. J. Sekuterski ("Sekuterski"), C.O. T. Steele ("Steele"), C.O. G. Torres ("Torres"), and C.O. Flickelstein ("Flickelstein").

In his complaint, plaintiff sets forth the following claims: (1) plaintiff was subject to excessive force by defendants Porter, Sekuterski, Steele, Baumgardner and Torres for an incident that occurred on May 30, 2003; (2) defendants Conway, Goord and James failed to protect plaintiff and/or failed to train their employees with regard to the May 30, 2003 incident; (3) defendant Hagmier exhibited deliberate indifference when he failed to treat plaintiff after the May 30, 2003 incident; (4) plaintiff was subjected to a misbehavior report for the May 30, 2003 incident by defendant Foley in retaliation for writing complaints; (5) plaintiff was subjected to a misbehavior report by defendant Foley on June 5, 2003 in retaliation for writing complaints; (6) plaintiff was denied due process by defendants Kennedy and Selsky at the disciplinary hearings arising out of the two misbehavior reports; (7) plaintiff was denied access to the courts when defendant Flickelstein interfered with his law library access; and (8) defendant Johnson harassed and/or retaliated against plaintiff. Dkt. #1, ¶¶ 62-97. Plaintiff seeks compensatory and punitive damages. *Id.*, ¶ 100.

Defendants' motion seeks dismissal of all claims except numbers (1) and (4) above. On March 31, 2010, plaintiff moved for summary judgment on grounds (5) and (6). For the following reasons, it is recommended that defendants' motion for partial summary judgment be granted and plaintiff's motion for partial summary judgment be denied.

**FACTS**

During his incarceration at Attica, plaintiff submitted a number of complaints to various DOCS employees. The first, dated March 25, 2003, was submitted to Superintendent Conway in which plaintiff alleged that he was harassed by C.O. Johnson and two other unnamed employees. Dkt. #50, ¶¶ 11-12. That was forwarded for investigation/resolution. *Id.* at ¶ 10. As a result, Sgt. Sekuterski interviewed plaintiff and received a statement by C.O. Johnson denying any harassment took place. *Id.* at ¶ 13. In his response memorandum, Sekuterski advised that when the matter was explained to plaintiff, the "inmate accepted my explanation and did not want to pursue the matter any further." *Id.* at ¶ 14.

Plaintiff submitted another letter of complaint dated March 27, 2003 to Conway alleging harassment by C.O. Johnson, who stopped plaintiff and made "a comment about [plaintiff's] wedding band." Again, the plaintiff was interviewed and Johnson submitted a statement. Sgt. Sekuterski advised in his response that he believed no harassment took place and that the plaintiff may have misinterpreted the situation. According to Sekuterski, when the matter was explained to plaintiff, "[plaintiff] agreed and accepted my conclusion to the investigation." *Id.* at ¶¶ 15-19.

Another letter of complaint, also dated March 27, 2003, was received by Conway's office on May 5, 2003 from the DOCS Inspector General's Office. The letter had originally been sent to the New York State Chief of Police and the Wyoming County District Attorney's Office. *Id.* at ¶¶ 20-21. That matter was ultimately referred to Deputy Superintendent James. *Id.* at ¶ 22. By memorandum dated May 6, 2003, Sgt. Sekuterski advised that the complaint had already been

dealt with on March 27, 2003, when both plaintiff and the C.O. involved were interviewed, and plaintiff indicated that he did not wish to pursue the matter further. *Id.* at ¶ 23.

Plaintiff also wrote to Commissioner Goord regarding alleged harassment by Attica staff. At no time did Goord read said letters. Dkt. #50, ¶ 6. Rather, letters from inmates addressed to Goord would be reviewed by one of his secretaries and would be forwarded to the appropriate division or bureau to take whatever action was deemed appropriate. *Id.* at ¶ 9.

On May 30, 2003, plaintiff was issued a misbehavior report by C.O. Porter for violating the following inmate rules: assault on staff; violent conduct; disturbing the order of the facility; failing to comply with a direct order; verbally harassing employees; and failing to comply with frisk procedures. *Id.* at ¶¶ 27-28. Those charges arose out of a use of force incident on May 30, 2003 involving defendants Porter, Sekuterski, Steele, Baumgardner and Torres. As a result of the misbehavior report, a disciplinary hearing was conducted before Sgt. Kennedy on June 5, 2003, in which plaintiff was permitted to call witnesses and submit evidence, including the complaints he had written in support of his theory that he had been subject to retaliation. *Id.* at ¶¶ 29-30. Following three extensions, the hearing concluded on June 23, 2003. *Id.* at ¶ 40. Kennedy made a credibility determination and found against the plaintiff. *Id.* at ¶ 42. Kennedy entered a finding of guilty on each of the charges, and imposed sanctions of 12 months in the Special Housing Unit ("SHU"), as well as 12 months loss of packages, commissary, phone privileges and good time. Dkt. #58, Ex. A, p.52.

Defendant Hagmier, a nurse employed at Attica, examined plaintiff following the use of force incident of May 30, 2003. Hagmier observed swelling to the right cheek. *Id.* at ¶¶ 2,24. His examination did not reveal any bleeding or other obvious injury, nor did plaintiff advise Hagmier of any such injury. *Id.* at ¶ 25.

Use of force incidents at Attica were reviewed at the local level to determine whether the use of force was justified. Dkt. #50, ¶ 3. At no time was it determined that staff at Attica had a pattern or practice of using excessive force. *Id.* at ¶ 4. Training of employees was routinely conducted 40 hours per year following initial training at DOCS academy. *Id.* at ¶ 5. That training included the proper use of force. *Id.* at ¶ 6.

On June 4, 2003, C.O. Foley was assigned as a Training Relief Officer at Attica. *Id.* at ¶ 44. That day, Foley was given materials confiscated by another officer from plaintiff's property. At that time, plaintiff was being housed in the SHU. *Id.* at ¶ 45. The material confiscated included a document relating to an unauthorized group known as "T.F.L." or Terrorists for Life. *Id.* at ¶ 46. That document contained statements supporting terrorism and/or violence. *Id.* at ¶ 47. As a result, Foley wrote a misbehavior report charging plaintiff with belonging to an unauthorized group and making threats. *Id.* at ¶ 48. When Foley wrote the report, he was unaware of the previous complaints written by plaintiff. *Id.* at ¶ 50

As a result of the second misbehavior report issued against plaintiff, defendant Kennedy conducted a disciplinary hearing that began on June 18, 2003 and was completed on June 19, 2003. *Id.* at ¶ 51.No witnesses testified, and Kennedy found plaintiff guilty of the charges. *Id.* at ¶ 52. Ultimately, the hearing

concerning the report by C.O. Foley was administratively reversed by defendant Selsky on June 16, 2004, because it was determined that there was a lack of evidence connecting the contraband and the inmate. Dkt. #58, ¶ 21; *Id.* at Ex. C

Although plaintiff claims he was denied access to the law library by defendant Flickelstein, plaintiff did not file a grievance under the established DOCS grievance procedure pursuant to 7 NYCRR § 701 *et seq*. *Id.* at ¶ 56.

## DISCUSSION AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F.Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995).

Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

**B.      Plaintiff's Claims**

**1.      Eighth Amendment**

Plaintiff contends that defendants Conway, Goord, James, and Sekuterski were deliberately indifferent with regard to continuous harassment, an

alleged "prison attack" by correctional officers, permitting a pattern of excessive force to persist at Attica, and failing to properly train staff. Dkt. #1, ¶¶ 62-68, 79-80, 80-88.

The Eighth Amendment requires prison officials "to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't. of Corr.*, 84 F.3d 614, 620 (2d Cir.1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Thus, pursuant to Section 1983, prison officials may be held liable for an inmate's injuries if the officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir.1988). In order to demonstrate such deliberate indifference, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official had "knowledge that an inmate face[d] a substantial risk of serious harm and he disregard[ed] that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d 614 at 620; *see also Warren v. Goord*, 476 F.Supp.2d 407, 410 (S.D.N.Y. 2007).

In addition to knowledge of the threat of danger to the inmate, personal involvement is also necessary to state a claim for failure to protect against prison officials. The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in the supervision of

subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d at 873; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir.1986); *see also Ashcroft v. Iqbal*, - - - U.S. - - - - , 129 S.Ct. 1937 (2009).

### a.    Failure to Protect

With respect to defendants Conway, James, and Sekuteriski, plaintiff cannot meet the objective component of a cognizable "failure to protect" claim, which requires him to show that he was incarcerated under conditions imposing a substantial risk of serious harm. *See Matthews v. Armitage*, 36 F.Supp.2d 121, 124-25 (N.D.N.Y.1999).

Prior to the use of force incident on May 30, 2003, plaintiff did submit several letters that were received by Conway's office regarding complaints of threats and/or harassment by C.O. Johnson. Those were forwarded for investigation and/or resolution. The undisputed facts indicate that steps were taken to interview the plaintiff and C.O. involved. Both times, plaintiff elected not to pursue his claim further. Another letter of complaint was received by Conway's office on May 5, 2003, forwarded from the DOCS Inspector General's Office. The letter had originally been sent to the New York State Chief of Police and the Wyoming County District Attorney's Office. That matter was referred to Deputy Superintendent James. That complaint dealt with the same subject matter of plaintiff's earlier letters, and Sgt. Sekuterski thus advised that the matter complained of had already been dealt with and that plaintiff did not wish to pursue the matter further. In light of these facts,

plaintiff does not succeed in showing that he was incarcerated under conditions posing a substantial risk of serious harm. His complaints were based solely on alleged verbal threats, that were unrelated to the subsequent use of force and his allegation of assault stemming therefrom. *See, e.g.*, *Desulma v. City of New York*, No. 98Civ.2078, 2001 WL 798002, at *6-7 (S.D.N.Y. July 6, 2001) ("verbal statements alone do not indicate a substantial threat of serious harm."). There is therefore no basis to conclude that Conway or James were aware of a substantial risk of harm to plaintiff.

Plaintiff also contends that he wrote to Goord about harassment by Attica staff. However, it is undisputed that Goord did not review plaintiff's letters. In analyzing claims under 42 U.S.C. § 1983, district courts in this Circuit have routinely held that the mere writing of a letter to a DOCS employee does not constitute personal involvement. "Generally, the allegation that a supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983." *Gayle v. Lucas*, No. 97 Civ. 0883(MGC), 1998 WL 148416, *4 (S.D.N.Y. 1998) (citing *Kinch v. Artuz*, No. 97 CIV. 2419 (LAP), 1997 WL 576038, at *3 (S.D.N.Y.1997); *Higgins v. Coombe*, No. 95 CIV. 8696(SS), 1997 WL 328623, at *11 (S.D.N.Y.1997)); *see also Richardson v. Coughlin*, 101 F.Supp.2d 127, 132-33 (W.D.N.Y.2000) (collecting cases). In any event, there is no evidence that Goord had any knowledge of plaintiff's complaints, and thus it cannot be argued that he was "aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed," or that he drew such an inference. *Farmer*, 511 U.S at 837.

**b.      Failure to Train; Pattern of Excessive Force**

While plaintiff alleges that Goord and Conway failed remedy a pattern and practice of alleged abuse at Attica, and that Goord, Conway, and James failed to train employees and failed to protect him, there is simply no evidence to support such claims. It is undisputed use of force incidents are documented and reviewed by DOCS executive staff to determine whether the use of force was justified. Plaintiff has not shown that staff at Attica had a pattern or practice of using excessive force. Furthermore, training of employees involved initial training at the DOCS academy with an additional forty hours per year, including training in proper use of force.  Even if a jury were to determine that the force used upon plaintiff was excessive, plaintiff has not established these supervisory officials'  personal involvement with regard to the May 30, 2003 incident. *See Colon*, 58 F.3d at 873.

Accordingly, I recommend that defendants' motion be granted as to plaintiff's Eighth Amendment failure to protect claim.

**2.      Inadequate Medical Care**

Plaintiff next alleges that Nurse Hagmier failed to administer any medical care despite knowing that plaintiff was suffering a head injury. Dkt. #1, ¶ 92.

The Eighth Amendment not only prohibits "physiically barbarous punishments," but also "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ' against which we must evaluate penal measures." *Estelle v. Gamble,* 429 U.S. 97,102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by

incarceration." *Id.* at 103. The *Estelle* court concluded that an unconstitutional denial of medical care occurs when there is a "deliberate indifference to serious medical needs of prisoners." *Id.* at 104. The deliberate indifference standard "incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citations and internal quotations omitted).

With respect to the objective component, the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). A serious medical condition exists where the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 701-02 (2d Cir.1998).

Plaintiff's allegation does not meet the objective component of an Eighth Amendment violation. Defendant Hagmier saw plaintiff after the use of force incident on May 30, 2003, and observed swelling to plaintiff's right cheek. His examination did not reveal any bleeding or other obvious injury. At that time, plaintiff was offered ice but refused. Such injuries do not, as a matter of law, rise to the level of a "serious medical condition" warranting Eighth Amendment protection. *See Davidson v. Scully*, 914 F.Supp. 1011, 1015 (S.D.N.Y.1996) (plaintiff's combined allegations of an eye condition, tinnitus, allergies, podiatric and knee injures, post-

surgery hernia condition, urological, dermatological and cardiological problems did not amount to a sufficiently serious injury); *Pabon v. Goord*, No. 99 Civ. 5869(THK), 2003 WL 1787268, *4 (S.D.N.Y. March 28, 2003) (clival lesion at the base of the inmate's skull not sufficiently serious); *Rodriguez v. Mercado*, No. 00 CIV. 8588 JSRFM, 2002 WL 1997885, *8 (S.D.N.Y. Aug. 28, 2002) (bruises to head, back, and wrists not sufficiently serious); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F.Supp.2d 303, 311 (S.D.N.Y.2001) (bleeding finger not a severe injury); *Henderson v. Doe*, No. 98 Civ. 5011, 1999 WL 378333, *2 (S.D.N.Y. June 10, 1999) (broken finger not severe). Indeed, plaintiff's own testimony supports the conclusion that the injury was not serious. When asked what Hagmier should have done, plaintiff responded that he should have offered ice, Advil, or Motrin for a big bruise on the side of his face and neck pain. *See* Dkt. #52, Ex. A., p. 40-41. Even assuming that those injuries were ignored by Hagmier, which is not evident in the record before the Court, plaintiff cannot meet the objective component of an Eighth Amendment violation. Plaintiff has thus not presented any evidence to raise a material issue of fact of deliberate indifference, and therefore it is recommended that defendant's motion for summary judgment on this claim be granted.

### 3. False Misbehavior Report / Retaliation Claim

Plaintiff contends that C.O. Foley falsely filed a misbehavior report in retaliation for plaintiff's multiple complaints against various DOCS employees. Dkt. #1, ¶ 77.

The Second Circuit has held that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."

*Boddie v. Robinson*, 105 F.3d 857, 862 (2d Cir. 1997). However, an allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, does state a claim under § 1983. *Franco v. Kelly*, 854 F.2d 584, 589-90 (2d Cir.1988). A plaintiff alleging retaliatory punishment "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. *Id.* at 80. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff "committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir.) (per curiam), *cert. denied*, 525 U.S. 907 (1998); *see also Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994) (holding that the defendants met their burden when "it was undisputed that [the plaintiff] had in fact committed the prohibited conduct").

        To prove that retaliation was the motivating factor behind the adverse action, the plaintiff must present facts supporting an inference of a causal connection between the adverse actions and the protected conduct. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (1) the temporal proximity between the protected activity and

the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation. *See Colon*, 58 F.3d at 872.

First,  it is apparent from plaintiff's moving papers that the complaints were drafted in March of 2003, 2 months before C.O. Foley wrote the misbehavior report on June 4, 2003. Dkt. #1, A1-A5. A subsequent letter dated May 8, 2003, was submitted to Superintendent Conway almost a full month prior to the misbehavior report written by Foley. *Id.* at A6. Even if one to two months satisfies the close temporal proximity requirement to establish a causal connection, plaintiff's remaining evidence does not raise a question of fact as to whether retaliation was a substantial or motivating factor in the issuance of the misbehavior report on June 4, 2003.

With respect to the issue of plaintiff's prior good conduct, his motion papers are silent on that issue. However, plaintiff was already in SHU for assaulting an officer when Foley charged him, which belies any suggestion that he had an unblemished disciplinary history. Dkt. #50, ¶¶ 2, 27-42.

Moreover, plaintiff does not allege that Foley or Clarke knew of his complaints or grievances. He has thus failed to provide a factual basis to conclude that Foley wrote the misbehavior report in retaliation for any complaint written by plaintiff, as Foley was not even aware of the complaints written. Dkt. #50, ¶   Rather, the misbehavior report was written while plaintiff was housed in SHU, after he had been removed from the general housing blocks, where the complained-of activity allegedly occurred. *Id.* at ¶ 45. Therefore the misbehavior report was written only after plaintiff had been removed from the area in which he had been living and complained about.

Finally, the record indicates that the misbehavior report was issued by Foley after he was given materials allegedly confiscated from the plaintiff by C.O. Clarke. *Id.* The material included documents regarding an unauthorized group known as the T.F.L. or Terrorists For Life. *Id.* at ¶ 46. That document contained statements supporting terrorism and/or violence. *Id.* at ¶ 47. Accordingly, a misbehavior report was written charging plaintiff with belonging to an unauthorized group and making threats. *Id.* at ¶ 48. The undisputed fact that Clarke provided the document to Foley undermines plaintiff's contention that the report was issued because of plaintiff's previous complaints against other correctional officers or DOCS employees. Even if some retaliatory motive were present, the misbehavior report would have nonetheless been issued based on the material found in plaintiff's property. *See Hynes*, 143 F.3d at 657 ("Thus, even assuming retaliatory motive, the defendants would be entitled to summary judgment 'if there were proper, non-retaliatory reasons for [Hynes'] punishment.'") (citing *Graham*, 89 F.3d at 81); *accord Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994) ("the conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage.")

In sum, plaintiff has not raised a material issue of fact that Foley's misbehavior report was retaliatory, and it is recommended that defendant's motion for summary judgment be granted on this claim.

### 4.     Due Process Claims

Plaintiff challenges two disciplinary hearings held before Hearing Officer Kennedy. The first concerns the use of force incident and subsequent misbehavior report dated May 30, 2003; the second arose out of the misbehavior report issued on June 4, 2003, relating to plaintiff's possession of materials discussing terrorism and/or violence. Dkt. #1, ¶¶ 93-96.

Although inmates retain due process rights in prison disciplinary proceedings, *Hanrahan v. Doling,* 331 F.3d 93, 97 (2d Cir.2003), the Supreme Court has clarified that due process protections are only required when the resulting disciplinary penalty "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and internal quotation marks omitted).

In the context of a prison disciplinary hearing, to comport with procedural due process, an inmate charged with a prison violation must be given "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action," and (4) support for the findings by "some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell,* 418 U.S. 539 (1974)). The Second Circuit has further explained that, "[a]lthough the

Court in *Hill* stated that the question is whether there is 'any evidence' that 'could' support the disciplinary decision, this Court has not construed the phrase 'any evidence' literally. Rather, we have looked to see whether there was 'reliable evidence' of the inmate's guilt." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (quoting *Hill*, 472 U.S. at 455-56).

Moreover, a hearing officer must not be so insufficiently impartial as to present "a hazard of arbitrary decisionmaking." *Wolff*, 418 U.S. at 571. An impartial hearing officer "is one who, *inter alia*, does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990); *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard"). It is well recognized, however, "that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir.1996). For example, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Id.*; *see Francis*, 891 F.2d at 46.

### a. Misbehavior Report dated May 30, 2004

Plaintiff's complaint alleges that defendant Kennedy did not act in an unbiased manner and ignored the evidence that plaintiff submitted at his disciplinary hearing. Dkt. #1, ¶ 94. He also argues that Kennedy failed to properly extend the hearing time period and denied production of evidence, specifically, photographs of C.O. Porter that had been requested. *Id.*

A review of the record belies plaintiffs claims. The transcript from plaintiff's disciplinary hearing dated June 5, 2003 through June 23, 2003, reflects that plaintiff was permitted to call witnesses and to submit evidence, including complaints he had written to support his theory that he had been subjected to retaliation. Dkt. #58, Ex. A at 1-50. During the hearing, plaintiff advised Kennedy of the questions he sought to ask the witnesses, and Kennedy in turn directed those questions to the witnesses as appropriate. At no time during the hearing was plaintiff denied the opportunity to seek relevant evidence from the witnesses who testified regarding the May 30, 2003 incident. Moreover, plaintiff could not have been denied photographs of C.O. Porter, as it is undisputed that no photographs were taken. *See* Dkt. #50, ¶ 42.

The record also does not support plaintiff's assertion that Kennedy "failed to conduct the hearing in a timely fashion." *See* Dkt. #1, ¶ 94. Plaintiff cites no legal theory or case law to support a due process claim arising out of the timeliness of a disciplinary hearing. The appropriate regulation for plaintiff's claim is 7 NYCRR § 251-5.1(b), which requires the hearing to be completed within fourteen days of the writing of the report "unless otherwise authorized by the commissioner or his designee. Where a delay is authorized, the record of the hearing should reflect the reasons for any delay or adjournment, and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or correctional goals." *Id.* The timing of plaintiff's hearing was consistent with that rule because Kennedy requested three extensions for the purposes of arranging witness testimony; two of those extensions involved locating an inmate witness for the

plaintiff. *See* Dkt. #58, ¶ 10. In any case, specific time limits imposed by state procedural requirements do not give rise to federally protected constitutional rights. *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir.1990); *accord, e.g.*, *Barnes v. Henderson*, 628 F.Supp.2d 407, 412-413 (W.D.N.Y. 2009).

After considering all of the evidence and testimony, including the fact that the complaints made by plaintiff prior to the incident did not mention any of the officers involved in the use of force incident of May 30, 2003, Kennedy found plaintiff guilty of violent conduct, creating a disturbance, assault on staff, harassment, refusing a direct order, and refusing a search or frisk. He stated on the record the following evidence that supported his disposition: the misbehavior report of C.O. Porter; the unusual incident report, the video tape of plaintiff's escort to the reception building; the use of force report; six memoranda regarding the incident addressed to Superintendent Conway; and the testimony of Porter, Baumgardener, Steele, Torres, and Sekuterski. Plaintiff has thus not raised a material issue of fact regarding his claim of a due process violation arising out of this disciplinary hearing, and summary judgment should be granted to defendant Kennedy on this ground.

**b.      Misbehavior Report dated June 4, 2003**

The second part of plaintiff's due process argument concerns the June 4, 2003 misbehavior report. Specifically, plaintiff alleges that there was not substantial evidence to support the charges. Dkt. #1, ¶ 94.

Defendant argues that the instant claim should be dismissed because the penalty imposed, 90 days of confinement in SHU, does not implicate a liberty interest worthy of due process protection. Dkt. 51, p. 19.

In general, the Second Circuit has held that stays in SHU of less than 101 days do not constitute an "atypical and significant hardship" necessary to create a liberty interest. *See Sealey v. Giltner*, 197 F.3d 578 (2d Cir.1999); *Mortimer Excell v. Fischer*, No. 08-CV-945, 2009 WL 3111711, at *9 (N.D.N.Y. 2009) ("[C]ourts have roundly rejected the notion that ... a short period of confinement, without additional hardships, creates a liberty interest even when confinement is completely segregated, such as when an inmate is sent to ... [SHU]."); *Borcsok v. Early*, No. 9:03-CV-395, 2007 WL 2454196, at *9 (N.D.N.Y.2007) (finding that 90-day confinement in SHU alone with 90-day loss of packages, commissary and telephone privileges insufficient to raise a liberty interest without showing there is an atypical and significant hardship); *Palmer v. Goss*, No. 02 Civ 5804(HB), 2003 WL 22327110, at * 6 (S.D.N.Y. Oct. 10, 2003), *aff'd*, *Palmer v. Richards*, 364 F.3d 60 (2d Cir.2004); *Durran v. Selsky*, 251 F.Supp.2d 1208, 1214 (W.D.N.Y. 2003) (quoting *Tookes v. Artuz*, No. 00CIV4969, 2002 WL 1484391, at * 3 (S.D.N.Y. July 11, 2002) ("[c]ourts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days or less, absent additional egregious circumstances, does not implicate a liberty interest.")); *see also Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000) (instructing district courts to develop detailed factual records "in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days"); *cf. Prince v. Edwards,* No. 99CIV8650, 2000 WL 633382 (S.D.N.Y. May 17, 2000) (suggesting that any period of segregation of one year or less affords no protected liberty interest).

In his response, plaintiff avers that the 90 days of confinement in SHU, which he received for the June 4, 2003 misbehavior report, should be considered in the aggregate with his previously-imposed penalty of one year in SHU, arising out of the May 30, 2003 misbehavior report and disciplinary hearing. Taken together plaintiff's aggregate sanctions would amount to 455 days.[1] *See, e.g., Giano v. Selsky*, 238 F.3d 223 (2d Cir. 2001). Dkt. #71, pp. 9-10. Even assuming that plaintiff has demonstrated a protected liberty interest, plaintiff received all the process he was due during his disciplinary hearing.

While plaintiff claims that there was not substantial evidence to support the charges, due process only requires some reliable evidence.[2] *See Luna*, 356 F.3d at 488. There was evidence in the record to support Kennedy's determination, namely, the misbehavior report that stated that C.O. Foley had reviewed material confiscated by C.O. Clarke that she took from plaintiff on June 1, 2003. The report went on to state that the document confiscated "talks of an unauthorized group known as T.F.L. this acronym stands for terrorists for life." Dkt. #58, ¶ 16. The document defined "T.F.L. as ...'dedicated loyal terrorist who bring a strong and positive revolutionary and terrorist message to all who have been oppressed by the oppressor. Just as the Black Panther method to overthrown [sic] all government.'" *Id.* Kennedy also relied on the document itself. Dkt. #78, Ex. B, p. 11.

---

[1] Plaintiff ultimately served 355 days for both incidents.

[2] New York law requires prison disciplinary rulings to be supported by "sufficiently relevant and probative" information "to constitute substantial evidence." *Foster v. Coughlin,* 76 N.Y.2d 964, 966 (1990) (internal quotation marks omitted). New York's requirement is thus more rigorous than the "some evidence" standard necessary to afford due process. *See Hill*, 472 U.S. at 449; *id.* at 459 & n.3. Director Selsky's reversal of plaintiff's disciplinary ruling therefore does not automatically establish his federal claim.

In arguing the lack of some evidence, plaintiff relies in part on his assertion that C.O. Foley was not the employee who first found the contraband and therefore, under 7 NYCRR § 251-3.1(b), C.O. Clarke should have authored the misbehavior report. Dkt. #71, Attach. #2, ¶ 4. However, 7 NYCRR § 251-3.1(b) states, in relevant part, "[t]he misbehavior report shall be made by the employee who has observed the incident or who has ascertained the facts of the incident." Foley has stated that he was the officer who determined the nature of the materials in question; it was therefore appropriate for him to author the report. Dkt. #54, ¶¶ 5-7; Dkt. #39, p. 3.

While the hearing was reversed administratively based on a lack of evidence following the filing by plaintiff of a New York CPLR Article 78 petition, this does not implicate the due process clause because the state evidentiary standard is higher than the federal standard. *See Sira v. Morton*, 380 F.3d 57, 76 n.9 (2d Cir.2004) ("New York law requires prison disciplinary rulings to be supported by sufficiently relevant and probative information to constitute substantial evidence. This requirement is sterner than the 'some evidence' standard necessary to afford due process."). Thus, although Kennedy's decision may not have been in accordance with New York law, it was based on sufficient evidence to satisfy federal due process requirements. *See Harris v. Taylor*, No. 9:09-CV-0705(LEK/GHL), 2010 WL 3021531, *9 (N.D.N.Y. July 14, 2010).

In sum, there is nothing in the record to support the conclusion that Kennedy denied plaintiff his due process rights at the Tier III disciplinary hearing. Thus, Selsky's decision affirming (and later reversing) the hearing officer's

determination cannot, standing alone, establish a federal constitutional violation. *See Eleby v. Selsky*, 682 F.Supp.2d 289, 293 (W.D.N.Y. 2010) ("Thus, plaintiff cannot show that his constitutional rights were violated during the disciplinary proceedings or hearing. Selsky's affirmance of the hearing officer's decision therefore cannot give rise to a § 1983 claim.") (citing *Loving v. Selsky*, No. 07-CV-6393, 2009 WL 87452, at *4 (W.D.N.Y. Jan. 12, 2009)); *see also Chavis v. vonHagn*, No. 02-CV-0119(Sr), 2009 WL 236060, *6, (W.D.N.Y. Jan. 30, 2009) (citing *Hameed v. Mann*, 57 F.3d 217, 224 (2d Cir.1995) (Selsky entitled to dismissal of claims where plaintiff failed to establish constitutional violations at disciplinary hearing)).

Plaintiff has failed to meet his burden of demonstrating that he suffered due process violations at the second disciplinary hearing. Therefore it is recommended that summary judgment be granted to defendants on this claim, and that plaintiff's motion for summary judgment should be denied.

## 5. Access to the Court

Plaintiff avers that defendant Flickelstein intentionally denied plaintiff's right to access the law library. Dkt. #1, ¶ 70. Flickelstein has raised the affirmative defense of administrative exhaustion. Dkt. #51, pp. 20-21.

The Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that exhaustion of administrative remedies in 1997(e) cases is mandatory and should be applied

broadly. *Id.* at 524. The *Nussle* Court reasoned that requiring inmates to follow the grievance process would ultimately "reduce the quantity and improve the quality of prisoner suits;" filter out frivolous claims; and for those cases that eventually come to court, the administrative record could potentially clarify the legal issues. *Id.* at 524-25. "Even when the prisoner seeks relief not available in grievance proceedings"-such as monetary damages-"exhaustion is a prerequisite to suit." *Id.* at 524 (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Thus, the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532.

DOCS employs a three-step Inmate Grievance Program that requires an inmate to: (1) file a grievance with the Inmate Grievance Review Committee as set forth in 7 NYCRR § 701.7(a)(1); (2) appeal to the superintendent within four working days of receiving the Inmate Grievance Resolution Committee's adverse written response as set forth in 7 NYCRR § 701.7(b)(1); and appeal to the Central Office Review Committee in Albany, New York within four working days of receipt of the superintendent's adverse written response, as set forth in 7 NYCRR § 701.7(c)(1). *Abney v. McGinnis*, 380 F.3d 663 (2d Cir.2004).

Defendant maintains that there is no evidence to suggest that the plaintiff ever properly submitted a grievance, much less exhausted his administrative remedies. Based on the record before the Court, including plaintiff's affidavit in opposition to defendants' motion for summary judgment, in which he admits that he did not file a grievance pursuant to DOCS procedure, there is no dispute that plaintiff

failed to exhaust his remedies. Dkt. #61, ¶ 1; *see also* Dkt. #52, Ex. A, pp. 22-23.

Furthermore, plaintiff's submissions do not offer any reason for not exhausting his

administrative remedies in this case. *See Hemphill v. New York,* 380 F.3d 680 (2d

Cir.2004)  Accordingly, I conclude that defendant Flickelstein has demonstrated his

entitlement to judgment as a matter of law with respect to plaintiff's claim of denial of

access to the court on the grounds that plaintiff failed to exhaust his administrative

remedies. Therefore it is recommended that summary judgment be granted to

defendant on this claim.

### 6.      Harassment Claim / Retaliation

Plaintiff's complaint alleges that on March 25, 2003, while on his way to

recreation, plaintiff was singled out and harassed by Johnson, Sekuterski, and two

other unidentified officers that threatened plaintiff with physical harm. Dkt. #1, ¶ 22.

After writing a complaint about that incident, plaintiff contends that Johnson then

harassed him about wearing his wedding band on the wrong finger. *Id.* at ¶ 24.

However, allegations of verbal threats or harassment, without more, do not give rise

to a constitutional claim. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986)

(verbal harassment is not actionable under § 1983) (per curiam); *Amaker v. Foley*,

No. 94-CV-0843, 2003 WL 21383010, at *4 (W.D.N.Y. Feb. 13, 2003) ("without

more, [inmate's] allegations of verbal threats, abusive language and racial epithets

cannot form the basis of a section 1983 claim"), *aff'd*, 117 Fed.Appx. 806 (2d

Cir.2005); *Malsh v. Austin*, 901 F.Supp.757, 763 (S.D.N.Y. 1995) (threats of

disciplinary action and physical violence, from which plaintiff did not allege any injury,

did not constitute a constitutional violation).

Moreover, plaintiff cannot establish a claim of retaliation. An allegation of retaliation must be more than *de minimis*; that is, it must be sufficient to deter a similarly situated person of ordinary firmness from exercising his or her rights. *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003). Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection. *Dawes*, 239 F.3d at 493 (citing *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir.1999) (per curiam)). This objective inquiry is "not static across contexts," but rather must be "tailored to the different circumstances in which retaliation claims arise." *Dawes*, 239 F.3d. at 493 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir.1999)).

Assuming plaintiff established that wearing his wedding ring implicates a constitutional right, his claim that Johnson's conduct in "harassing" plaintiff about how he wore his ring is clearly *de minimis* and cannot state a colorable retaliation claim. The complaint is wholly conclusory and fails to offer any evidentiary support that Johnson's actions were retaliatory. As such, it is recommended that this claim be dismissed, and that summary judgment be granted to defendants.

## CONCLUSION

For the foregoing reasons, it is hereby recommended that defendants' motion for partial summary judgment be granted and plaintiff's motion for partial summary judgment be denied.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir.1988). Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." ***Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.***

**SO ORDERED.**

  S/ H. Kenneth Schroeder, Jr.
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

Dated:     November 1, 2010
           Buffalo, New York